[Cite as *Nnazor v. Cent. State Univ.*, 2016-Ohio-8539.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Reginald Nnazor, | : | |
| Plaintiff-Appellant, | : | No. 16AP-327 |
| | | (Ct. of Cl. No. 2015-00202) |
| v. | : | |
| | | (REGULAR CALENDAR) |
| Central State University, | : | |
| Defendant-Appellee. | : | |

D E C I S I O N

Rendered on December 30, 2016

**On brief:** *Mowery, Youell & Galeano, Ltd., James S. Mowery, Jr.*, and *Merl H. Wayman*, for appellant. **Argued:** *Merl H. Wayman.*

**On brief:** *Mike DeWine*, Attorney General, and *Velda K. Hofacker*, for appellee. **Argued:** *Velda K. Hofacker.*

APPEAL from Court of Claims of Ohio

LUPER SCHUSTER, J.

{¶ 1} Plaintiff-appellant, Reginald Nnazor, appeals from a decision and judgment entry of the Court of Claims of Ohio granting the motion for summary judgment of defendant-appellee, Central State University ("CSU"). For the following reasons, we affirm.

I. Facts and Procedural History

{¶ 2} On November 3, 2010, Juliette Bell, the Provost and Vice President for Academic Affairs at CSU, sent an offer letter to Nnazor offering Nnazor the position of Dean of the College of Education, effective January 3, 2011. The letter stated Nnazor's salary would be $94,000 and that he would serve at the pleasure of the board of trustees. Further, the letter stated that upon his acceptance of the offer, Bell would:

> refer [Nnazor] for a tenured faculty appointment as a full professor of education. The faculty Collective Bargaining Agreement governs faculty appointments, tenure and rank. Pursuant to the Collective Bargaining Agreement, [Nnazor's] faculty appointment will be based upon the recommendation of the Department Chairperson in consultation with the faculty of the Department.

(Pl.'s Ex. A at 1, Mar. 16, 2015 Compl.) The letter stated Nnazor would effectuate his acceptance of the offer by signing the offer letter and returning it to Bell within seven working days. Nnazor signed the offer letter on November 5, 2010.

{¶ 3} On December 3, 2010, Nnazor wrote a letter to Bell "formally and respectfully" requesting CSU grant him tenure as a full professor of education. (Ex. 5, Apr. 4, 2016 Pl.'s Memo. in Opp.) Nnazor then began his employment with CSU in the position of Dean of the College of Education on January 3, 2011. Subsequently, on February 25, 2011, the Board of Trustees of CSU approved Nnazor's request of tenure and faculty status for the rank of professor of education "as part of [Nnazor's] appointment to the position of Dean of the College of Education effective March 1, 2011." (Ex. 6, Pl's Memo. in Opp.) The grant of tenure and faculty status did not require Nnazor to perform any additional duties or responsibilities, and Nnazor did not serve as faculty or teach any courses during the time he served as Dean.

{¶ 4} In May 2014, Charles Wesley Ford, Jr., the Provost and Vice President for Academic Affairs of CSU asked Nnazor to resign his position as Dean of the College of Education. Nnazor indicated he would submit a resignation letter but requested an opportunity to discuss his adjusted salary and pay schedule. Nnazor then tendered a resignation letter to CSU on May 30, 2014 which stated, in part, that Nnazor "would like to resign [his] position as Dean of the College of Education effective June 30, 2014 to assume active role as tenured Full Professor of Education effective July 1, 2014." (Ex. C, Mar. 4, 2016 Def.'s Mot. for Summ. Jgmt.)

{¶ 5} After receipt of Nnazor's resignation letter, CSU issued a letter to Nnazor on June 23, 2014 stating, in pertinent part:

> We are pleased to reaffirm your tenured appointment as Professor of Professional Education effective fall 2014. This is a nine month appointment which begins on August 7, 2014.

> The base salary is $63,000. The university will pay you $5,250.00 per month for July and August 2014. * * *
>
> We know that our offer represents an important professional decision for you. Please contact the Chair of the Professional Education Department to clarify the department's expectations and to discuss your professional activities, course assignments, syllabi, textbook orders and office space.
>
> * * * In addition to teaching and scholarship, we expect all faculty to advise students, to participate in University activities, and to be active in public service and other services as discussed in the Collective Bargaining Agreement. Criteria for reappointment, tenure, and promotion focus on all of these elements.
>
> * * *
>
> Please accept this Offer of Appointment by signing below in the space noted and returning a copy of this letter to [Ford] within seven working days.

(Ex. D, Def.'s Mot. for Summ. Jgmt.) Pursuant to the collective bargaining agreement between CSU and the American Association of University Professors, Central State University Chapter, effective September 1, 2011 through August 31, 2014, the minimum salary for the position of professor was $63,000.

{¶ 6} Nnazor did not sign the June 23, 2014 letter. However, Nnazor did begin serving as a member of the faculty and was paid at the rate of $63,000 per calendar year. Since that time, Nnazor has received salary increases in accordance with the collective bargaining agreement.

{¶ 7} On March 16, 2015, Nnazor filed a complaint alleging CSU breached Nnazor's contract of employment when it unilaterally reduced his salary from $94,000 to $63,000. Nnazor also asserted a claim that the reduction in his pay violated his state and federal constitutional rights. Initially, the trial court stayed the case and referred the matter to mediation, which was ultimately unsuccessful. CSU filed a motion for judgment on the pleadings on September 10, 2015, asserting both that the factual assertions in the complaint did not support a claim for breach of contract and that the Court of Claims lacked jurisdiction over claims alleging violations of constitutional rights. In a

January 25, 2016 entry, the trial court granted CSU's motion in part and dismissed Nnazor's claim for the alleged violation of constitutional rights.

{¶ 8} CSU then filed a motion for summary judgment on March 4, 2016 arguing Nnazor's breach of contract claims fail because (1) Nnazor was an at-will employee when he served as Dean of the College of Education, not a contract employee; (2) Nnazor resigned his position as Dean of the College of Education so any alleged contract of employment ceased to exist upon his resignation; (3) the reduction in salary, which Nnazor claims to be the breach of his contract, occurred after the alleged contract ceased to exist; and (4) Nnazor's employment as a faculty professor is pursuant to the collective bargaining agreement, so the trial court lacks jurisdiction over the matter. After obtaining leave of court, Nnazor filed a memorandum contra on April 4, 2016. CSU filed, on April 8, 2016, a motion for leave to file a supplemental memorandum in support of its motion for summary judgment and the supplemental memorandum.

{¶ 9} In an April 20, 2016 decision, the trial court granted CSU leave to file the supplemental memorandum. In that same decision, the trial court granted CSU's motion for summary judgment, concluding Nnazor's breach of contract claim fails as a matter of law because Nnazor cannot demonstrate he performed under a contract for his position as Dean, that Nnazor failed to identify any contractual provision that CSU breached, and that Nnazor did not present any evidence that an implied contract existed. The trial court filed a judgment entry concurrently with its decision, granting summary judgment in favor of CSU. Nnazor timely appeals.

## II. Assignments of Error

{¶ 10} Nnazor assigns the following errors for our review:

> [1.] The lower court erred by granting appellee's motion for summary judgment and dismissing appellant's breach of contract claim, upon finding that appellant cannot prove that he performed under a contract as the Dean of the College of Education and a tenured professor.
>
> [2.] The lower court erred by granting appellee's motion for summary judgment and dismissing appellant's breach of contract claim, upon finding that appellant accepted appellee's offer of employment as Professor of Professional

Education, effective Fall 2014, at a base annual salary of $63,000 even though he did not sign the offer letter.

[3.] The lower court erred by granting appellee's motion for summary judgment and dismissing appellant's breach of contract claim, upon finding that appellant's employment was governed by the Collective Bargaining Agreement.

[4.] The lower court erred by granting appellee's motion for summary judgment and dismissing appellant's breach of contract claim upon finding it did not have jurisdiction to hear appellant's breach of contract claim with regards to his 2014 letter of appointment.

## III.  Standard of Review and Applicable Law

{¶ 11} An appellate court reviews summary judgment under a de novo standard. *Coventry Twp. v. Ecker*, 101 Ohio App.3d 38, 41 (9th Dist.1995); *Koos v. Cent. Ohio Cellular, Inc.*, 94 Ohio App.3d 579, 588 (8th Dist.1994). Summary judgment is appropriate only when the moving party demonstrates (1) no genuine issue of material fact exists, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds could come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence most strongly construed in its favor.  Civ.R. 56(C); *State ex rel. Grady v. State Emp. Relations Bd.*, 78 Ohio St.3d 181, 183 (1997).

{¶ 12} Pursuant to Civ.R. 56(C), the moving party bears the initial burden of informing the trial court of the basis for the motion and identifying those portions of the record demonstrating the absence of a material fact.  *Dresher v. Burt*, 75 Ohio St.3d 280, 293 (1996).  However, the moving party cannot discharge its initial burden under this rule with a conclusory assertion that the nonmoving party has no evidence to prove its case; the moving party must specifically point to evidence of the type listed in Civ.R. 56(C) affirmatively demonstrating that the nonmoving party has no evidence to support the nonmoving party's claims.  *Id.*; *Vahila v. Hall*, 77 Ohio St.3d 421, 429 (1997).  Once the moving party discharges its initial burden, summary judgment is appropriate if the nonmoving party does not respond, by affidavit or as otherwise provided in Civ.R. 56,

with specific facts showing that a genuine issue exists for trial. *Dresher* at 293; *Vahila* at 430; Civ.R. 56(E).

{¶ 13} In his four assignments of error, Nnazor argues the trial court erred in granting CSU's motion for summary judgment on Nnazor's claim for breach of contract. To succeed on a claim of breach of contract, a plaintiff must demonstrate (1) the existence of a contract, (2) plaintiff's performance, (3) defendant's breach, and (4) damages or loss to the plaintiff. *Thyssen Krupp Elevator Corp. v. Constr. Plus, Inc.*, 10th Dist. No. 09AP-788, 2010-Ohio-1649, ¶ 13, citing *Jarupan v. Hanna*, 173 Ohio App.3d 284, 2007-Ohio-5081, ¶ 18 (10th Dist.).

## IV. First Assignment of Error – Existence of a Contract

{¶ 14} In his first assignment of error, Nnazor argues the trial court erred in concluding Nnazor was not employed under a contract when he accepted the position of Dean of the College of Education and received his tenure and faculty appointment. Nnazor argues there remain genuine issues of material fact as to whether the November 3, 2010 offer letter constituted a contract of employment. In response, CSU argues Nnazor's breach of contract claim fails as a matter of law because Nnazor served as an at-will employee when he served as Dean of the College of Education, and, thus, there is no contract.

{¶ 15} The Supreme Court of Ohio has delineated two exceptions to the employment-at-will doctrine: "(1) the existence of implied or express contractual provisions which alter the terms of discharge; and (2) the existence of promissory estoppel where representations or promises have been made to an employee." *Wright v. Honda of Am. Mfg., Inc.*, 73 Ohio St.3d 571, 574 (1995), citing *Mers v. Dispatch Printing Co.*, 19 Ohio St.3d 100, 104-05 (1985). Nnazor argues the November 3, 2010 offer letter coupled with the February 25, 2011 letter confirming Nnazor's award of tenure and faculty status collectively operate to establish either an express or implied contract of employment.

{¶ 16} Here, it is irrelevant whether there was either an express or implied contract of employment because Nnazor resigned his position as Dean of the College of Education, evidenced by his May 30, 2014 letter. Thus, even if we were to somehow construe the November 3, 2010 offer letter and CSU's subsequent conduct as a contract, Nnazor admits

he ceased performing under that contract when he resigned. As we noted above, an essential element to a breach of contract claim is the plaintiff's performance. *Thyssen Krupp Elevator Corp.* at ¶ 13. Where an employee admittedly resigns his employment, the employee cannot demonstrate his own performance and thus cannot establish a claim for a breach of contract. *Kunkle v. Akron Mgt. Corp.*, 9th Dist. No. 22511, 2005-Ohio-5185, ¶ 20 (holding that where an employee submitted his resignation instead of refusing to resign, absent any claims for duress or constructive discharge, the employee "cannot prove that [the employer] breached any implied contract not to fire [the employee], because [the employee] resigned" and the employer is entitled to summary judgment as a matter of law). Because Nnazor resigned his position of Dean, CSU is entitled to judgment as a matter of law in regard to Nnazor's claim of a breach of contract related to his position of Dean. Accordingly, we overrule Nnazor's first assignment of error.

## V. Second, Third, and Fourth Assignments of Error – Employment as Professor

{¶ 17} Nnazor's second, third, and fourth assignments of error are interrelated and we address them together. In his second assignment of error, Nnazor argues the trial court erred in concluding Nnazor accepted CSU's offer of employment as professor at the starting salary of $63,000 when he began performing as a professor. In his third assignment of error, Nnazor asserts the trial court erred in concluding the collective bargaining agreement covered Nnazor's breach of contract claim. In his fourth and final assignment of error, Nnazor argues the trial court erred in concluding it lacked jurisdiction to hear Nnazor's breach of contract claim with respect to his position as professor. Instead, Nnazor argues there remain genuine issues of material fact as to whether he agreed to the terms of his employment because he never signed the June 23, 2014 letter.

{¶ 18} The trial court concluded that Nnazor accepted CSU's offer of employment when he began performance in the fall of 2014 despite his lack of signature. CSU does not dispute that Nnazor did not sign the June 23, 2014 letter informing him of the $63,000 salary for his position of Professor of Professional Education. Nnazor characterizes the June 23, 2014 letter not as an offer of employment but, instead, an offer to make a contract to which Nnazor never assented. Nnazor points to his request to meet with the

Provost or board of trustees to discuss adjustments to his salary once he resigned as Dean and stayed on as a professor. As CSU notes, however, if Nnazor asserts the June 23, 2014 letter did not constitute a contract because of his refusal to sign it, then the letter cannot form the basis of a breach of contract claim.

{¶ 19} To the extent Nnazor argues the November 3, 2010 offer letter detailing his salary as Dean of the College of Education and CSU's subsequent conduct in granting Nnazor tenure and faculty status should also be construed as a contract governing his salary as a faculty professor, we agree with the trial court that the collective bargaining agreement governs Nnazor's employment as a professor. Indeed, Nnazor admitted as much in his complaint. The collective bargaining agreement in effect at the time that Nnazor began performing his position of professor listed a minimum annual salary of $63,000 for a professor, the exact amount CSU offered to, and subsequently paid to, Nnazor.

{¶ 20} Finally, the trial court concluded that Nnazor's arguments related to loss of seniority or years of service are issues governed by a collective bargaining agreement. We agree. Portions of the collective bargaining agreement are part of the record in this case, and the collective bargaining agreement covers minimum salaries in Article 33, salary adjustments for years of service in Article 34, salary adjustments for promotion in Article 35, and the grievance and arbitration procedure in Article 47. Nnazor's claim that his resignation of his position of Dean could negatively affect his seniority or years of service falls squarely within the provisions of the collective bargaining agreement to which Nnazor admits he is subject.

{¶ 21} Because Nnazor's claim of breach of contract stems from an alleged violation of the collective bargaining agreement, we agree with the trial court that it lacked jurisdiction to consider Nnazor's claims with regard to his June 23, 2014 letter of appointment. As this court has held, "[t]he Court of Claims lacks jurisdiction over an action which alleges a violation of a collective bargaining agreement because R.C. 4117.09 grants exclusive jurisdiction over such actions to the courts of common pleas." *Crable v. Ohio Dept. of Youth Servs.*, 10th Dist. No. 09AP-191, 2010-Ohio-788, ¶ 12, citing *Moore v. Youngstown State Univ.*, 63 Ohio App.3d 238, 242 (10th Dist.1989).

{¶ 22} For these reasons, we agree with the trial court that there remain no genuine issues of material fact with regard to Nnazor's claim for breach of contract. Accordingly, we overrule Nnazor's second, third, and fourth assignments of error.

## VI. Disposition

{¶ 23} Based on the foregoing reasons, the trial court did not err in granting CSU's motion for summary judgment. Having overruled Nnazor's four assignments of error, we affirm the decision and entry of the Court of Claims of Ohio.

*Judgment affirmed.*

DORRIAN, P.J., and BRUNNER, J., concur.